788 So.2d 1013 (2001)
GIGLIOTTI CONTRACTING NORTH, INC., Appellant,
v.
TRAFFIC CONTROL PRODUCTS OF NORTH FLORIDA, INC., Norstar Building Corp., Lennar Homes, Starwood/Tampa I, L.P., and SCI Development, Inc., Appellees.
Gigliotti Contracting North, Inc., Appellant,
v.
Norstar Building Corp., Appellee.
Nos. 2D99-5033, 2D00-1701.
District Court of Appeal of Florida, Second District.
March 7, 2001.
*1014 Dana G. Toole of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, and Stephen R. Dye of Dye, Deitrich, Prather, Petruff & St. Paul, P.L., Bradenton, for Appellant.
J. Meredith Wester and Angela C. Cabassa of Mechanik, Nuccio, Bentley, Williams & Hearne, P.A., Lutz, for Appellee Traffic Control Products of Florida, Inc.
Michael P. Brundage of Hill, Ward & Henderson, P.A., Tampa, for Appellee Norstar Building Corp.
CASANUEVA, Judge.
Gigliotti Contracting North, Inc., appeals a summary judgment after the trial judge denied its motion for intervention in a garnishment proceeding and a judgment of dismissal with prejudice of its construction lien action based on the prior garnishment *1015 judgment. We reverse but commend the trial judge for his valiant efforts to make order out of chaos.
Because of the intertwining factual posture of these cases we outline briefly the procedural history.
Traffic Control's Garnishment Case Appeal No. 2D99-5033: In 1998, Traffic Control Products of North Florida, Inc., filed an action against SCI Development, Inc., for damages based on breach of contract. A final summary judgment against SCI and in favor of Traffic Control was entered on June 15, 1999, for $48,096.45. Traffic Control sought to satisfy its judgment by serving a writ of garnishment on Norstar Building Corporation, who owed money to SCI. Norstar answered and acknowledged it owed SCI the sum of $49,624.24, based on the unpaid balance of a construction project contract, but that it had received a number of notices to owner pursuant to chapter 713, Florida Statutes (1997). This indicated that Norstar expected the potential of suits to foreclose claims of lien if the subcontractors remained unpaid. In due time, Traffic Control moved for summary final judgment of garnishment.
Meanwhile, in October 1999, Gigliotti, an unpaid subcontractor of SCI on Norstar's construction project with SCI, sought to intervene in the garnishment proceeding as assignee of a contract with SCI and asserted a claim to any proceeds due SCI. Norstar later amended its answer to state that it had determined that three unpaid subcontractors and material suppliers on the project, one of whom was Gigliotti, were due a combined $48,500.46 and, further, that it was entitled to retain money for remedial work and attorney's fees.
Gigliotti's Construction Lien Case Appeal No. 2D00-170: Before the final summary judgment hearing in the garnishment action, and sensing impending frustration in its efforts there, Gigliotti filed a claim of lien on Norstar's property, the same property that was the subject of the construction contract between Norstar and SCI. In November 1999 Gigliotti commenced an action to foreclose the lien.
At the summary judgment hearing in the garnishment case, the trial court orally ordered that from the balance that Norstar owed SCI, Norstar could set off $1,971.94 and $3,672.96 to satisfy two unpaid subcontractors, $573.78 for remedial work, and $4,764.41 for its attorneys' fees. Thus, a substantial remaining amount was owed to SCI and available to satisfy Traffic Control's judgment against SCI. The final summary judgment of garnishment awarded Traffic Control $37,641.15. In the same order, Gigliotti's motion to intervene was denied. Gigliotti received no payment on its claim of more than $42,000. In January 2000 the trial court consolidated the garnishment action and the construction lien foreclosure action.
In February 2000 the trial judge determined that Gigliotti's lien foreclosure case was barred by the doctrine of collateral estoppel and dismissed the lien action with prejudice. In doing so, he relied upon Traffic Control's final summary judgment of garnishment which had provided: "the claim of lien recorded on October 10, 1999, by Gigliotti in the amount of $42,855.56 shall be deemed satisfied and released upon payment of this judgment by Norstar Building Corporation." As can be seen from this scenario, in the garnishment action the trial judge had adjudicated a claim by a party that he had not allowed into the case. Basing the dismissal of that party's construction lien case on collateral estoppel only added injury to insult.
Counsel at oral argument conceded that Norstar has not yet paid out the garnisheed *1016 funds. Norstar is willing to pay the funds but claims that it is merely the innocent stakeholder and uncertain who has the better claim to the funds. It understandably does not want to pay SCI's contract price twice.
The statutory remedy of garnishment is governed by the procedures outlined in chapter 77, Florida Statutes (1997). Garnishment statutes are strictly construed. See Williams v. Espirito Santo Bank of Florida, 656 So.2d 212 (Fla. 3d DCA 1995); Paz v. Hernandez, 654 So.2d 1243 (Fla. 3d DCA 1995); T-Jett Enters., Inc. v. Ernest & Stewart, Inc., 543 So.2d 390 (Fla. 3d DCA 1989). Failure to strictly adhere to the garnishment procedures is at the root of Gigliotti's problems. Gigliotti tried to enter the garnishment case as an intervenor, claiming standing only as an assignee of SCI, the judgment debtor, instead of as an unpaid subcontractor on Norstar's construction project. As an assignee, it merely stood in the shoes of SCI with no greater rights to the money than SCI.
Section 77.16, Florida Statutes (1997), provides that a claimant to funds that may be garnisheed, such as Gigliotti, is required to file an affidavit asserting that a certain amount of the funds in the hands of the garnishee belongs to it. If the parties cannot resolve competing claims to the same funds, a jury must be impaneled to determine those competing rights. See H.B. London & Co. v. Wiles, 695 So.2d 876, 878 (Fla. 2d DCA 1997).
It was not an abuse of discretion to deny the motion to intervene as intervention is not a matter of right. See Dep't of Children & Family Servs. v. Brunner, 707 So.2d 1197 (Fla. 1st DCA 1998). However, the pleadings before the trial court did suggest that Gigliotti had a meritorious claim. Denying intervention without leave to comply with the statutory process effectively denied Gigliotti its due process rights to have its apparently meritorious claim as an unpaid subcontractor adjudicated on the merits.
We do not absolve Gigliotti of its responsibility to properly comply with the statutory requirements. Its failure to do so contributed to the procedural quagmire confronting the trial judge. Had its various amended motions to intervene instead been filed in compliance with section 77.16's affidavit requirement, unnecessary waste of judicial labor would have been avoided. Had the trial court permitted Gigliotti an opportunity to comply with section 77.16, or had Gigliotti complied with the statute on its own, its contention that it was entitled to the funds held by the garnishee, Norstar, would have been resolved in a more efficient manner as contemplated by the garnishment statutes. Accordingly, we reverse and set aside the final summary judgment of garnishment and remand with instructions to permit Gigliotti to file the statutorily mandated affidavit to assert its claim to the funds held by the garnishee.
Next, we address the dismissal of the construction lien case. In light of our reversing the consolidated garnishment judgment, we also reverse the dismissal with prejudice of Gigliotti's lien case as it was necessarily predicated upon the legal conclusions of the garnishment action. Additionally, the dismissal was wrongfully based upon the performance of a future action which had not then yet taken place, the payment of the judgment by Norstar.
Reversed and remanded with instructions.
PARKER, A.C.J., and DANAHY, (Senior) Judge, concur.