WELLS, Judge.
 

 Phillip Michael Cullen, III, the attorney for Linda Patchett, the plaintiff/judgment creditor below, appeals from an order awarding section 57.105 fees and costs against him and Patchett as a sanction following dissolution of three separate writs of garnishment. We reverse.
 

 In February 2002, Patchett secured a $776,089.04 money judgment against Harry H. Marsh. Since that time, Patchett’s attempts to collect on the judgment consistently have been frustrated. In November 2006, Marsh sought to discharge this debt in federal bankruptcy court. The following October, discharge was denied because the bankruptcy court found that Marsh had “knowingly and fraudulently ... misl[ed] his creditors and his bankruptcy trustee” by misrepresenting his income. Specifically, the bankruptcy court found that Marsh received substantially more than the $800 a month gross income that he claimed from his employer, BHS Optical, Inc. (“BHS”), an entity owned by his close personal friend and optometrist, Dr. Barry Ginsberg.
 
 [1]
 
 The additional income from BHS came in the form of direct payments on Marsh’s behalf for rent, credit cards, cable and electricity bills, life insurance premiums, and at least one doctor’s bill:
 

 The debtor’s gross misstatement ... of his Statement of Financial Affairs in listing his 2006 income,
 
 alone
 
 compels this Court to deny the issuance of a Discharge of Debtor. Defendant presently is employed, at least on a part-time basis, by Dr. Barry Ginsberg as an optician ..., and generally has been engaged in the optical business for many years. Dr. Ginsberg and the debtor apparently have engendered a close personal and business relationship. Based on defendant’s Schedule I contained within his Bankruptcy Schedules ..., the debtor earns gross monthly income of $800.00. Defendant’s Statement of Financial Affairs reflects that for the year 2006, he earned only $8,500 in wages, and from “Support from Dr. Ginsberg, Family and Friends.” The trial record presents a starkly different scenario.
 

 For the calendar year 2006 (through the November 3 petition date), Mr. Marsh actually earned at least an additional $27,642.73 (not including his weekly salary from BHS). This sum represents the aggregate of the payments made by BHS on behalf of, and/or for the benefit of, the defendant during 2006, extracted from BHS’s check stubs.... The $27,624.73 encompasses rental paid on defendant’s residence ($14,020.00); American Express charges ($7,154.87); Florida Power & Light Company utility service for defendant’s residence ($2,783.59); life insurance pre
 
 *238
 
 miums paid to Prudential Financial ($1,638.59); attorneys’ fees, including the fee paid to his bankruptcy counsel ($1,550.00); Allstate Insurance Company ($88.64); Adelphia Cable ($133.78); and a doctor’s bill paid to a Dr. Gonsky ($255.00)....
 
 In light of the defendant’s employment by BHS, which is solely owned by Dr. Ginsberg, and considering the varying nature of the numerous payments made by BHS on behalf of defendant, the Court determines that the afore-referenced $27,624.73 constitutes income to defendant, which should have been included in the defendant’s response, to ... defendant’s Statement of Financial Affairs. Considering the magnitude of the “oversight,” the Court concludes that defendant’s omission was made knowingly and fraudulently to mislead his creditors and his bankruptcy trustee.
 

 Pursuant to Bankruptcy Rule 7054(a), the Court shall enter Judgment denying the issuance of a Discharge to Debtor to Harry Hale Marsh.
 

 (Emphasis added).
 

 Freed of the constraints of Marsh’s bankruptcy proceeding delay, on January 15, 2008, Patchett sought to enforce her judgment by serving a continuing writ of garnishment on BHS, Marsh’s employer. On February 8th, Marsh served a claim of exemption and requested a hearing. That same day, Marsh sought to dissolve the continuing writ, claiming that he had never received a copy of it or the related documents as required by section 77.041(2) of the Florida Statutes. In response to Marsh’s exemption claim, Patchett filed Marsh’s and Ginsberg’s depositions taken during the bankruptcy proceedings.
 

 Marsh subsequently provided an updated fact information sheet and related financial documents to Patchett. Included in these documents was a Bank of America statement for the account into which Marsh’s salary from BHS was being deposited. On April 2nd, on learning of this account, Patchett served a writ of garnishment on the bank (“the first BOA writ”). On April 12, 2008, Marsh served a claim of exemption as to this writ and requested a hearing. Days later, Marsh sought to dissolve it, claiming that he had never received a copy of the writ or the related documents as required by section 77.041(2) of the Florida Statutes. Patchett filed a traverse denying the assertions contained in Marsh’s claim of exemption; she also filed a separate notice adopting Marsh’s and Ginsberg’s depositions as sworn statements contradicting Marsh’s claim of exemption.
 

 To address the technical deficiencies raised by Marsh regarding the first BOA writ, on May 23, 2008, Patchett served a second writ of garnishment on the bank (“the second BOA writ”). Marsh filed a claim of exemption as to this writ and requested a hearing and then moved to dissolve the second BOA writ claiming, in part, that the money in the account was exempt from garnishment under sections 222.11(2)(c) and 222.11(3) of the Florida Statutes (2008).
 
 [2]
 
 Patchett filed a response
 
 *239
 
 denying the assertions contained in Marsh’s claim of exemption and again adopting Marsh’s and Ginsberg’s depositions as sworn statements contradicting Marsh’s claim of exemption.
 

 The continuing writ of garnishment and the first BOA -writ were dissolved by the court below on May 6 and June 3, 2008 on technical grounds for failure to comply with section 77.041(2).
 
 [3]
 
 Summary judgment was subsequently granted on the second BOA writ on September 16, 2008, on a finding that the funds in that account were exempt from garnishment.
 

 While the three writs of garnishment were pending below, Marsh filed three motions for section 57.105 sanctions against Patchett. After the continuing writ and the first BOA writ were dissolved and summary judgment on the second BOA writ was granted, the court below granted these motions sanctioning both Patchett and her attorney, Phillip Michael Cullen, III. As to the continuing writ and the first BOA writ, the court below found that because Patchett had not served Marsh as required by section 77.041(2), either Patch-ett or attorney Cullen “knew or should have known ... that [the writs were] not supported by the material facts necessary to establish the claim[s] or would not be supported by the application of the then-existing law to the material facts.” As to the second BOA writ, the court found that based upon the bank statements Marsh had provided to Patchett, along with the updated fact information sheet, Patchett or attorney Cullen knew or should have known that the funds in this account were exempt. Fees in the amount of $8,235 and costs in the amount of $1,250 were imposed against Patchett and her attorney. We reverse both awards.
 

 Section 57.105 of the Florida Statutes provides for an award of attorney’s fees as a sanction for maintaining a frivolous claim or defense when the court finds that: the losing party or the losing party’s
 

 attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) [w]as not supported by the material facts necessary to establish the claim or defense; or (b) [w]ould not be supported by the application of then-existing law to those material facts.
 

 § 57.105(1), Fla. Stat. (2008).
 

 As to the continuing writ of garnishment and the first BOA writ, the sanction order identifies no specific claim or defense that is unsupported by either material facts or by application of the law to those facts.
 
 See, e.g., United Auto. Ins. Co. v. Miami Med. Group, Inc.,
 
 935 So.2d 41, 43 (Fla. 3d DCA 2006) (confirming that orders awarding section 57.105 sanctions must contain “specific findings” that a claim or defense was not supported by the facts or the law). Rather, the order merely makes a blanket statement that because Patchett and Cullen failed to comply with the service requirements of section 77.041(2) (i.e., mail copies of the motion for writ of garnishment and the writ, itself, to Marsh’s last
 
 *240
 
 known address), they either knew or should have known after this defect was raised that the writs were “not supported by the material facts necessary to establish the claim or would not be supported by the application of the then-existing law to the material facts.” This is baseless. As we explain below, the failure to serve these writs and related documents on Marsh does nothing to undermine the factual or legal basis on which these writs rest.
 

 1. The continuing writ
 

 The motion filed by Patchett in support of the continuing writ states only that: (1) on February 2, 2002, Patchett recovered a judgment in the amount of $776,089.04 plus interest against Marsh; (2) Patchett does not believe Marsh has any visible property on which she might levy to satisfy that judgment; and (3) Marsh is employed by BHS, which holds money or property belonging to Marsh. Failure to serve Marsh with the writ and related documents did not, in any manner, undermine any of these representations or “claims.” To the contrary, as the bankruptcy court had only recently confirmed, each and every one of these allegations is true.
 

 The continuing writ, itself, which is signed by a circuit court judge and issued by the lower court to the State’s Sheriffs, is addressed to BHS, Marsh’s acknowledged employer, and makes no factual or legal claims whatsoever, stating only that: (1) BHS must serve an answer to the writ on attorney Cullen within twenty days and state whether it is Marsh’s employer and indebted to Marsh for salary or wages; (2) under federal law, only a limited amount of Marsh’s earnings may be subjected to garnishment; and (3) any amounts over and above those amounts exempted by federal law, are to be held pending further court order.
 
 [4]
 
 Failure to serve a copy of the continuing writ on Marsh did nothing to undermine anything stated in this writ.
 

 
 *241
 
 The failure to serve Marsh in accordance with section 77.041(2) did not therefore support a finding that “the Continuing Writ was not supported by the material facts necessary to establish the claim or would not be supported by the application of the then-existing law to the material facts.” Hence, the sanction order relating to this writ must be reversed.
 

 2. The first BOA writ
 

 The same holds true for the first BOA writ. The motion in support of that writ, like the continuing writ to Marsh’s employer, states only that: (1) on February 2, 2002, Patchett recovered a judgment in the amount of $776,089.04 plus interest against Marsh; (2) Patchett does not believe Marsh has any visible property on which she might levy to satisfy that judgment; and (3) BOA holds money or property belonging to Marsh. The writ, itself, similarly states only that BOA has twenty days in which to advise Patchett’s attorney whether BOA is or was indebted to Marsh; whether BOA possessed any tangible or intangible personal property belonging to Marsh; and whether it knew of anyone else indebted 'to or holding property belong to Marsh. Again, the failure to comply with section 77.041(2) by serving of copy of this motion and writ on Marsh did not establish that any of these representations or “claims” were untrue or unsupported. The sanction order relating to this writ, likewise, must be reversed.
 

 3. Failure to timely serve Marsh with copies of the continuing writ and the first BOA writ.
 

 We also discern no basis for imposing section 57.105 sanctions on Patchett and her attorney for failing to serve Marsh with the continuing writ by January 21, 2008, and with the first BOA writ by April 7, 2008 as the court below, without explication, concluded. The continuing writ was issued on January 3, 2008, and served on the garnishee on January 15th. On February 8th, Marsh sought to dissolve this writ, claiming that Patchett had failed to serve him with a copy of this writ and its supporting documents by January 21st. The first BOA writ was issued on March 27, 2008, and served on the garnishee on April 2nd. On April 18, 2008, Marsh sought to dissolve this writ, claiming that Patchett had failed to serve him with a copy of this writ and its supporting documents by April 7, 2008.
 

 While neither of these writs was properly served on Marsh, he received notice of them and was able to timely claim exemptions. In both cases, he did this either before or at the same time he moved to dissolve for insufficiency of service. Most significantly here, each writ was dissolved without any effort to delay on Patchett’s part following a hearing.
 
 [5]
 

 See
 
 § 57.105(3), Fla. Stat. (2008) (providing for sanctions where the “moving party proves by a preponderance of the evidence that any action taken by the opposing party ... was taken primarily for the purpose of unreasonable delay”);
 
 Cheetham v. Brickman,
 
 861 So.2d 82 (Fla. 3d DCA 2003) (reversing a section 57.105 fee award, in part, because there was “no evidence that Cheetham took any action ‘primarily for the purpose of unreasonable delay’ within the meaning of section 57.105(3) of the Florida Statutes”). Under the circumstances, Marsh got pre
 
 *242
 
 cisely what he was entitled to: an expeditious hearing on his motions and orders dissolving these writs. On the record before us, no sanctions were warranted.
 

 4. The second BOA writ
 

 We also reverse the sanction award relating to the second BOA writ. That sanction was imposed because the trial court found that when Patchett applied for the second writ, she had already been advised by Marsh that the funds held in his BOA account were exempt, making her claim unsupported by the facts and law. For a number of reasons, we find that the trial court erred in imposing a sanction on this basis.
 

 First, Patchett’s “claim” is encompassed in her motion for writ of garnishment which states only that: (1) Patchett holds a $776,089.04 plus interest judgment against Marsh; (2) Patchett does not believe Marsh has any visible property on which she might levy; and (3) BOA “holds money or other property
 
 owed or belonging
 
 to Defendant, Harry H. Marsh.” (Emphasis added). Marsh’s claim that the funds in this account are exempt from execution, do not contradict these facts.
 

 Second, the second BOA writ states only that BOA has twenty days in which to advise Patchett’s attorney whether BOA is or was indebted to Marsh; whether BOA possessed any tangible or intangible personal property belonging to Marsh; and whether it knew of anyone else indebted to, or holding property belonging to, Marsh. Like the first BOA writ, the second BOA writ makes no factual or legal claims whatsoever. Thus, Marsh’s claim that the funds in this account are exempt from execution does not contradict any “claim” stated in this writ.
 

 Third, Marsh’s claim that the funds held by BOA are exempt from execution under sections 222.11(2)(c) and 222.11(3) of the Florida Statutes does not contradict Patch-ett’s “claim” that she holds an unsatisfied judgment against Marsh and that BOA is holding funds in an account for him. To the contrary, Marsh’s exemption claim is no more than an attempt to avoid use of the funds on deposit at BOA to satisfy Patchett’s concededly valid claim.
 

 Given that Marsh had just gone to great lengths to hide his true income from BHS and had even gone so far as filing a fraudulent financial statement with a federal bankruptcy court in an attempt to discharge this debt, Patchett and her attorney were prudent in
 
 not
 
 accepting Marsh’s representations that the funds in the BOA account were exempt. Patchett and her attorney were, in fact, under no obligation to accept Marsh’s exemption claim, but were entitled instead to contest it and to have a hearing “as soon as [was] practicable to determine the validity of the claimed exemptions,” at which Marsh, not Patchett, bore the burden of proving entitlement to a section 222.11 exemption. § 77.041(3), Fla. Stat. (2008);
 
 see Brock v. Westport Recovery Corp.,
 
 832 So.2d 209, 211 (Fla. 4th DCA 2002) (finding that the judgment debtor bore the burden of proving his entitlement to the section 222.11 exemption at a hearing held on a motion to dissolve a writ of garnishment);
 
 Cadle Co. v. G & G Assocs.,
 
 757 So.2d 1278, 1279 (Fla. 4th DCA 2000) (“The burden of proving the entitlement to [a section 222.11] exemption is on the debtor.”). That is precisely what happened here.
 

 Fourth, while Marsh ultimately established entitlement to an exemption so as to have this writ dissolved, the fact that he prevailed on the merits entitles him to no sanction award. As this and many other courts have repeatedly confirmed, merely losing a case on the merits is not a basis for a section 57.105 fee award.
 
 See Carnival Leisure Indus. Ltd. v. Arviv,
 
 655 So.2d
 
 *243
 
 177, 181 (Fla. 3d DCA 1995) (‘“Merely losing, either on the pleadings or by summary judgment, is not enough to invoke the operation of [section 57.105].’ ” (quoting
 
 Whitten v. Progressive Cas. Ins. Co.,
 
 410 So.2d 501, 506 (Fla.1982),
 
 receded from in pait on other grounds, Fla. Patient’s Comp. Fund v. Rowe,
 
 472 So.2d 1145 (Fla.1985)));
 
 see also Bowen v. Brewer,
 
 936 So.2d 757, 762 (Fla. 2d DCA 2006) (“Winning a motion for summary judgment does not conclusively prove a section 57.105 claim. If that were the standard, then every award of summary judgment would be followed by a section 57.105 motion.”) (citation omitted);
 
 Wendy’s of N.E. Fla., Inc. v. Vandergriff,
 
 865 So.2d 520, 523 (Fla. 1st DCA 2003) (“An award of fees is not always appropriate under section 57.105,even when the party seeking fees was successful in obtaining the dismissal of the action or summary judgment in an action.”):
 
 Mullins v. Kennelly,
 
 847 So.2d 1151, 1155 (Fla. 5th DCA 2003) (“Although the revised statute has expanded the number of circumstances in which attorney’s fee may be awarded, an award of fees is not always appropriate under section 57.105,even though the party seeking fees was successful in obtaining the dismissal of the action.”);
 
 Read v. Taylor,
 
 832 So.2d 219, 222 (Fla. 4th DCA 2002) (stating that “courts have made clear that an award of fees may not be appropriate under section 57.105,even though the party seeking fees was successful in obtaining the dismissal of the action”). Simply put, Marsh did not establish that Patchett’s “claim[s]” had no merit; rather, he proved that in this instance that he was entitled to avoid them. And the record reflects no delay or other improper behavior on either Patchett’s or her attorney’s part. We therefore find that on the record before us there was no basis for imposing sanctions on either Patchett or her attorney for either seeking or prosecuting the second BOA writ of garnishment. The sanction imposed as to this writ is, therefore, also reversed.
 

 Because no basis appears in the instant record to support imposition of sanctions under section 57.105 or otherwise, the order on appeal is, in its entirety, reversed.
 

 [1]
 

 . The B in BHS stands for "Barry” as in Dr. Barry Ginsberg, and the H stands for “Harry” as in Harry Marsh.
 

 [2]
 

 . Section 222.1 l(2)(c)-(3) of the Florida Statutes (2008) provides:
 

 [ (2) ](c) Disposable earnings of a person other than a head of family may not be attached or garnished in excess of the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. s. 1673.
 

 (3) Earnings that are exempt under subsection (2) and are credited or deposited in any financial institution are exempt from attachment or garnishment for 6 months after the earnings are received by the financial institution if the funds can be traced and properly identified as earnings. Commingling of earnings with other funds does not
 
 *239
 
 by itself defeat the ability of a head of family to trace earnings.
 

 [3]
 

 . Section 77.041(2) of the Florida Statutes (2008) provides:
 

 The plaintiff must mail, by first class, a copy of the writ of garnishment, a copy of the motion for writ of garnishment, and, if the defendant is an individual, the "Notice to Defendant” to the defendant’s last known address within 5 business days after the writ is issued or 3 business days after the writ is served on the garnishee, whichever is later. However, if such documents are returned as undeliverable by the post office, or if the last known address is not discoverable after diligent search, the plaintiff must mail, by first class, the documents to the defendant at the defendant's place of employment. The plaintiff shall file in the proceeding a certificate of such service.
 

 [4]
 

 . The writ in pertinent part provides:
 

 To All and Singular the Sheriffs of the State:
 

 YOU ARE COMMANDED to summon Garnishee,
 
 BHS OPTICAL, INC. ...
 
 who is required to serve an answer to the Writ on Philip Michael Cullen, III, Chartered, attorney for Plaintiff ... within twenty (20) days after the service on the Garnishee, exclusive of the day of service, and to file the original with the Clerk of this Court either before service on the attorney or immediately thereafter. The answer shall state whether the Garnishee is tire employer of the Defendant, Harry H. Marsh, and whether the Garnishee is indebted to the defendant by reason of salary or wages. The Garnishee's answer shall specify the periods of payment (for example, weekly, biweekly, or monthly) and amount of salary or wages and be based on the Defendant’s earnings for the pay period during which this writ is served on the Garnishee.
 

 During each pay period, a portion of the Defendant's salary or wages as it becomes due shall be held and not disposed of or transferred until further order of this Court. The amount of salary or wages to be withheld for each pay period shall be made in accordance with the following paragraph. This writ shall continue until the Plaintiff's judgment is paid in full or until otherwise provided by court order.
 

 Federal law (15 U.S.C. §§ 1671-1763) limits the amount to be withheld from salary or wages to no more than 25% of any individual defendant’s disposable earnings (the part of earnings remaining after the deduction of any amounts required by law to be deducted) for an pay period or to no more than the amount by which the individual's disposable earnings for the pay period exceed 30 times the federal minimum hourly wage, whichever is less.
 

 For administrative costs, the garnishee may collect $5.00 against the salary of the defendant for the first deduction and $2.00 for each deduction thereafter.
 

 The total amount of the final judgment as set out in the Plaintiff's Motion is $776,089.04.
 

 FAILURE TO FILE AN ANSWER WITHIN THE TIME REQUIRED MAY RESULT IN THE ENTRY OF JUDGMENT
 
 *241
 
 AGAINST THE GARNISHEE FOR THE ABOVE TOTAL AMOUNT.
 

 [5]
 

 . The motion to dissolve the first BOA writ was heard on May 6, 2008, and an order dissolving that writ was entered the same day. The motion to dissolve the continuing writ was heard on June 3, 2008, and an order dissolving that writ was entered that day.