# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-0069
Lower Tribunal No. 21-CA-234

_____

GRADY C. JUDD, in his official capacity as Sheriff of Polk County, REGINALD GREEN, individually and JOSEPH HICKS, individually,

Appellants,

v.

CHRISTINA HAEGELE, as Personal Representative of the ESTATE OF CHANCE HAEGELE, deceased, for the benefit of his estate and survivors, to wit: CHRISTINA HAEGELE and CHRISTINA HAEGELE, individually,

Appellee.

_____

Appeal from the Circuit Court for Polk County.
Wayne M. Durden, Judge.

March 28, 2025

LAMBERT, B.D., Associate Judge.

Grady Judd, in his official capacity as Sheriff of Polk County, and Reginald Green and Joseph Hicks, deputies with the Polk County Sheriff's Office, individually, ("the Deputies"), timely appeal the trial court's post-final-judgment

order denying their motion for sanctions filed under section 57.105(1), Florida Statutes (2020).[1]  We reverse.

I.

This case emanates from the fatal shooting of Chance Haegele ("Decedent"), who was twenty years old at the time, by Deputies Green and Hicks while they were on duty.  On the date of the shooting, one of Decedent's friends had called the Polk County's Sheriff's Office to express concern over a suicidal social media post that Decedent had made.  Decedent had struggled with a number of mental health conditions over the years, and had prior interactions with the Polk County Sheriff's Office related to involuntary civil commitments under Florida's Baker Act and Marchman Act.  Decedent's mother, Christina Haegele, had also contacted the Sheriff's Office that day about initiating a possible Baker Act proceeding for Decedent.

When law enforcement arrived on the scene, Haegele informed them that Decedent had a shotgun.  The Deputies had also observed Haegele's efforts to wrestle the shotgun away from Decedent.  Haegele was unsuccessful, and Decedent fled with the weapon. The Deputies came upon Decedent in a residential neighborhood and repeatedly ordered him to drop his weapon, which he did not do.

---

[1] We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A); *Clearwater Fed. Sav. & Loan Ass'n v. Sampson*, 336 So. 2d 78, 79 (Fla. 1976) ("Where an order after judgment is dispositive of any question, it becomes a final post decretal order.").

Instead, Decedent moved towards one of the Deputies and pointed the shotgun at him. A resident in the neighborhood confirmed that she saw and heard the Deputies order Decedent multiple times to lower his shotgun, but Decedent instead raised his gun at Deputy Green. The Deputies then shot Decedent, resulting in his death.

II.

Haegele, both in her individual capacity and as the personal representative of her son's estate, filed suit in federal court against Judd, in his capacity as Sheriff of Polk County, and Deputies Green and Hicks, individually, asserting causes of action against them under 42 U.S.C. § 1983 for the use of excessive force, and for wrongful death under Florida's Wrongful Death Act, codified at section 768.16 et. seq., Florida Statutes.

After the parties had conducted discovery, Judd and the Deputies moved for summary judgment, claiming that they were entitled to qualified immunity from these claims. *See Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) ("Qualified immunity affords complete protection to government officials sued individually . . . ." (citation omitted)). They argued that, under the facts and circumstances of the case, the deadly force used by the Deputies was not excessive as they reasonably feared for their safety and the safety of others in the area when Decedent ignored their commands and pointed the shotgun at Deputy Green.

The federal court granted summary judgment in favor of Judd and the

Deputies on Haegele's claims brought under 42 U.S.C. § 1983, writing:

> In short, the deputies here had witnessed Chance engage in a forceful struggle with Haegele for the shotgun, then flee through a residential neighborhood. When Deputies Green and Hicks did encounter him, he refused to comply with orders to drop the shotgun and actually raised the shotgun at Deputy Green.
>
> Under these circumstances, Deputies Green and Hicks reasonably feared for their safety and the safety of others in the area. Shooting Chance—an armed man who threatened law enforcement with a deadly weapon—was not a violation of the Fourth Amendment. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1168 (11th Cir. 2009) ("[T]he escalation into deadly force was justified by Garczynski's refusal to comply with the officers' commands. After identifying themselves, the officers repeatedly ordered Garczynski to show his hands. They also repeatedly commanded him to drop the phone and then, after he raised a gun to his head, to drop his gun. Instead of obeying these commands, Garczynski swung the gun from his head in the direction of the officers, at which point they fired. The officers reasonably reacted to what they perceived as an immediate threat of serious harm to themselves."); *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) ("At least where orders to drop the weapon have gone unheeded, an officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force."). Nor was it excessive force for the deputies to shoot Chance nine times to dispel the threat. *See Jean-Baptiste v Gutierrez*, 627 F.3d 816, 821–22 (11th Cir. 2010) ("A police officer is entitled to continue his use of force until a suspect thought to be armed is 'fully secured.'" (citation omitted)).

4

*Haegele v. Judd*, Case No. 8:19-cv-2750-T-33CPT, 2020 WL 7710147, at *8 (M.D. Fla. Dec. 29, 2020).

In the same order, the court declined to exercise its supplemental jurisdiction over Haegele's state law wrongful death actions and dismissed those claims without prejudice. *Id.* at *9–10 ("[T]he Eleventh Circuit has 'encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.'" (quoting *Raney v. Allstate Ins.,* 370 F.3d 1086, 1089 (11th Cir. 2004))). Final judgment was entered in favor of Sheriff Judd and the Deputies and against Haegele, both individually and in her capacity as the personal representative of her son's estate. *Id.* at *10. Haegele did not appeal.

## III.

Shortly after final summary judgment was entered against her in federal court, Haegele filed suit against Judd and the Deputies in state court regarding the fatal shooting, alleging separate causes of action against each for wrongful death and for battery. Judd and the Deputies answered the complaint and asserted several affirmative defenses. Pertinent here, Judd and the Deputies answered that under section 776.012(2), Florida Statutes (2017), the Deputies were justified in using deadly force and that, resultingly, under section 776.032(1), Florida Statutes, they were immune from this civil action for their use of such force.

Section 776.012(2) provides, in pertinent part, that a "person is justified in using . . . deadly force if he or she reasonably believes that using . . . such force is necessary to prevent imminent death or great bodily harm to himself or herself or another." Section 776.032(1) then provides, in pertinent part, that a person who uses force as permitted under section 776.012 is justified in their conduct and is accordingly immune from a civil action brought against them by, among others, the personal representative or heirs of the person against whom the force was used.

Judd and the Deputies further asserted as an affirmative defense that the wrongful death and battery claims being brought against them were barred under the doctrine of collateral estoppel, otherwise known as issue preclusion. The elements necessary for collateral estoppel are:

> (1) [T]he identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually litigated.

*Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (citation omitted). The doctrine of collateral estoppel essentially "bars relitigation of the same issues between the same parties in connection with a different cause of action." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) (citation omitted).

Judd and the Deputies then filed a motion for judgment on the pleadings or, alternatively, for final summary judgment. Consistent with their aforementioned

6

affirmative defenses, they argued that Haegele's claims were barred by collateral estoppel because the factual issue of whether the Deputies' use of deadly force was excessive and whether they reasonably feared for their safety and the safety of others had been conclusively resolved in their favor by the federal court. As such, Judd and the Deputies maintained that under sections 776.012(2) and 776.032(1), they were immune from the instant civil action filed against them by Haegele.

There was no factual dispute that the Deputies had used deadly force in shooting Decedent. The trial court, in addressing the motion, focused on whether the Deputies reasonably believed that their use of deadly force was necessary to prevent imminent death or great bodily harm to themselves or another. As mentioned, Judd and the Deputies argued that this issue had already been conclusively determined in their favor during the earlier federal litigation between these identical parties.

The trial court granted the motion for judgment on the pleadings and for summary judgment, concluding that Haegele was collaterally estopped from maintaining this action. The court addressed the five elements of collateral estoppel, finding that whether the Deputies' use of deadly force was reasonable under the circumstances was presented to the federal court in the prior litigation and that this issue was a critical and necessary part of the federal court's final judgment entered in favor of Judd and the Deputies. The trial court then found that the remaining

7

elements of collateral estoppel—namely, the parties in both cases were identical, they had a full and fair opportunity to previously litigate the issue, and the issue involving whether the Deputies reasonably used deadly force was actually litigated—were all established;[2] thus, under sections 776.032(1) and 776.012(2), the court found that Judd and the Deputies were immune from the civil action filed. Final judgment was thereafter entered in favor of Judd and the Deputies and against Haegele.

Haegele timely appealed this final judgment, which this court affirmed without opinion. *Haegele v. Judd*, 363 So. 3d 1069 (Fla. 6th DCA 2023).

IV.

Returning to the present appeal, Judd and the Deputies had served their motion for sanctions under section 57.105(1) at or about the time that they had filed their aforementioned motion for judgment on the pleadings, or alternatively, motion for summary judgment. This statute provides:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

---

[2] These elements were not challenged by Haegele.

(a) Was not supported by the material facts necessary to establish the claim or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

§ 57.105(1)(a)–(b), Fla. Stat.

Following this court's mandate in the prior appeal, Judd and the Deputies scheduled a hearing on their motion for sanctions. They argued that, based upon the specific findings made by the federal court in the parties' earlier litigation, Haegele had been collaterally estopped from the inception in the instant state court action from ever prevailing. Judd and the Deputies submitted that, resultingly, it was clear they were and would be immune under section 776.032(1) from the civil action by Haegele regarding the shooting; thus, Haegele and her counsel knew or should have known that her complaint was frivolous as it could never have been supported by any justiciable issue of law or fact.

In denying the motion for sanctions, the trial court first distinguished that Haegele's causes of action for battery were never raised and therefore never addressed in the federal court litigation. The court also noted that the allegations in Haegele's wrongful death action were that the Deputies "intentionally, recklessly or negligently" caused Decedent's death, and that these elements differed from the elements necessary to prove the 42 U.S.C. § 1983 claims brought by Haegele in federal court for the deprivation of constitutional rights. The trial court also

observed that the summary judgment entered by the federal judge in favor of Judd and the Deputies had not "discuss[ed] the notions of 'negligence' or 'unlawful touching' in any regard." Based upon the foregoing, the court concluded that Haegele's wrongful death and battery claims had not been so lacking in merit to justify granting Judd and the Deputies' motion for sanctions under section 57.105(1).

Judd and the Deputies timely moved for rehearing, which was summarily denied. This timely appeal ensued.

V.

"Generally, the standard of review of a trial court's order [regarding] section 57.105(1) attorney's fees is abuse of discretion. However, to the extent a trial court's order on fees is based on an issue of law, this court applies de novo review." *Lago v. Kame By Design, LLC*, 120 So. 3d 73, 74 (Fla. 4th DCA 2013) (citing *Ferere v. Shure*, 65 So. 3d 1141, 1144 (Fla. 4th DCA 2011)).

We conclude that the trial court erred as a matter of law when, in denying the motion for sanctions, it focused on the different elements in the wrongful death and battery causes of action versus the elements of the § 1983 claims brought in federal court. Instead, the dispositive issue was that once the federal court determined that the Deputies' use of deadly force was not excessive and was reasonably necessary to defend themselves from being harmed by Decedent, they, and by implication, Judd, were, as a matter of law, immune under the plain language of section

10

776.032(1) from any type of civil action brought against them by Haegele for shooting Decedent. That the elements of the causes of action for wrongful death and battery asserted by Haegele differed from the elements of her § 1983 claims brought in federal court was of no significance because the causes of action for wrongful death and battery are indisputably civil actions. Section 776.032(1), Florida Statutes, provided Judd and the Deputies with immunity from these civil causes of action.[3]

VI.

We acknowledge that "merely losing a case" is not a basis for sanctions under section 57.105. *Cullen v. Marsh*, 34 So. 3d 235, 242 (Fla. 3d DCA 2010) (citations omitted). Here, though, there was more. The material facts previously found by the federal court made Judd and the Deputies immune under section 776.032(1) from liability in any subsequent civil action related to their shooting of Decedent. Stated somewhat differently, not only could the material facts and existing law necessary to support Haegele's state court civil causes of action not be established or shown, the previously-determined facts by the federal court and the law applicable to those

---

[3] We also note that Judd and the Deputies complied with the section 57.105(4), Florida Statutes, "safe harbor" requirement in that they afforded Haegele the required twenty-one days to withdraw her claims before seeking any sanctions, which she did not do.

facts affirmatively supported that Judd and the Deputies were immune in the instant civil action.

Under these circumstances, when the requirements of section 57.105(1) are met, the statute directs that a trial court "shall" award a reasonable attorney's fee. § 57.105(1), Fla. Stat.; *see also S.R. v. State*, 346 So. 2d 1018, 1019 (Fla. 1977) ("Although there is no fixed construction of the word 'shall,' it is normally meant to be mandatory in nature." (citing *Neal v. Bryant*, 149 So. 2d 529, 532 (Fla. 1962))). We therefore hold that the trial court reversibly erred in denying Judd and the Deputies' motion for sanctions. *See also Southford v. Hatton*, 566 So. 2d 527, 528–29 (Fla. 2d DCA 1990) (holding that the trial court should have awarded attorney's fees under section 57.105(1) because the appellant prevailed on his motion for summary judgment under the doctrines of res judicata and collateral estoppel (citation omitted)); *O'Brien v. Brickell Townhouse, Inc.*, 457 So. 2d 1123, 1123–24 (Fla. 3d DCA 1984) (affirming trial court order granting attorney's fees under section 57.105 when the appellant was attempting to relitigate in state court identical issues that had been resolved, adversely to him, in the federal courts and therefore failed to plead any justiciable issue (citations omitted)).

Accordingly, we reverse the order denying Judd and the Deputies' motion for sanctions; and we remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

STARGEL and WOZNIAK, JJ., concur.


Edward B. Kerr and Hank B. Campbell, of Campbell Trohn Tamayo & Aranda, P.A., Lakeland, for Appellants.

Ashley N. Richardson and Marie A. Mattox, of Marie A. Mattox, P.A., of Tallahassee, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED