**REGIONS BANK, etc., Plaintiff,**

v.

**Larry S. HYMAN, etc., et al., Defendants.**

**Case No. 8:09–CV–1841–T–17MAP.**

United States District Court, M.D. Florida, Tampa Division.

Signed March 7, 2015.

Allison Doucette, John A. Anthony, Stephenie Biernacki Anthony, Edmund S. Whitson, III, Megan Marlowe Greene, Anthony & Partners, LLC, Tampa, FL, for Regions Bank, etc.

Herbert Roy Donica, Donica Law Firm, PA, Tampa, FL, for Larry S. Hyman, etc.

## ORDER

ELIZABETH A. KOVACHEVICH, District Judge.

This cause is before the Court on:

Dkt. 218 Claim of Exemption
Dkt. 255 Motion to Dissolve Writs of Garnishment
Dkt. 273 Response
Dkt. 289 Transcript of Motion Hearing of 7/8/2013
Dkt. 347 Status Report
Dkt. 356 Amended Status Report
Dkt. 363 Transcript of Evidentiary Hearing of 8/20/2013
Dkt. 382 Report and Recommendation
Dkt. 384 Objections (Regions Bank)

A Final Judgment was entered in favor of Plaintiff Regions Bank ("Regions"), and against Defendants. (Dkt. 177). The Final Judgment has been affirmed on appeal. (Dkt. 444, 455). Regions Bank sought to collect the judgment by garnishing Defendant Kearney's bank accounts. USAmeribank filed an Answer and Platinum Bank filed an Answer (Dkt. 212, Dkt. 249). Plaintiff Regions filed a Reply to Platinum Bank's Answer. (Dkt. 261).

Defendant Bing Charles W. Kearney, Jr. ("Kearney") moved to dissolve two writs of garnishment, (USAmeribank Writ and Platinum Bank Writ) (Dkt. 255). Plaintiff Regions Bank opposed the Motion to Dissolve (Dkt. 273).

The assigned Magistrate Judge conducted a Motion Hearing on July 8, 2013, and also took testimony of witnesses Bing Kearney, Justin Rowlson, and James M. Reed.(Dkt. 289). An evidentiary hearing was conducted on August 20, 2013, at which testimony was taken from Bing Kearney, William Lance Ponton, Yazmin Tolzman, Wendy Blankenhorn, and Camilla Gabertini. The assigned Magistrate Judge has entered a Report and Recommendation in which it is recommended that the two writs of garnishment be dissolved. As to the USAmeribank Writ, the assigned Magistrate Judge found that based on Plaintiff's noncompliance with notice provisions of the garnishment statutes, the writs should be dissolved, applying *Zivitz v. Zivitz*, 16 So.3d 841, 847 (Fla. 2d DCA 2009), *Cullen v. Marsh*, 34 So.3d 235 (Fla. 3d DCA 2010); *Rudd v. First Union Nat.*

*Bank of Florida*, 761 So.2d 1189, 1192 (Fla. 4th DCA 2000) (reversed ruling that motion to dissolve was premature and remanding to allow debtor to file motion to dissolve and assert exemptions). The assigned Magistrate Judge further found that the Answer of USAmeribank was deficient and deprived the other owners of their statutorily required notice. The assigned Magistrate Judge further found that when Plaintiff Regions was advised of the other owners of the six accounts, Plaintiff did not serve them, and this failure further justifies granting the dissolution of the writ. Based on the recommendation to dissolve the two writs of garnishment, the assigned Magistrate Judge found it was not necessary to address the Claims of Exemption, but did so in the interest of completeness. The assigned Magistrate Judge found that the signature card form is ambiguous and confusing as to the form of ownership, such that he could not find that the Kearneys expressly chose the joint-tenancy box. The assigned Magistrate Judge further found by clear and convincing proof that when the Kearneys opened the 056 account, they intended to open a tenancy by the entireties account.

As to the Platinum Bank Writ, the assigned Magistrate Judge found that Plaintiff Regions did not serve the notice required by Sec. 77.055, F.S., on the owners disclosed by the Answer of Garnishee. The assigned Magistrate Judge concluded that the account owners disclosed in the Answer were foreclosed from timely mov-

ing to dissolve the Writ, and therefore the Platinum Bank Writ should be dissolved. *See Beardsley v. Admiral Ins. Co.,* 647 So.2d 327 (Fla. 3d DCA 1994) (prior panel affirmed denial of motion to dissolve writ; the factual dispute as to exempt status of funds should proceed to trial; reversing final judgment and remanding for compliance with statutory procedures). The accounts at Platinum Bank are held in the names of Clayton Kearney and Bing Kearney.

Judgment Debtor Kearney moved to dissolve the writ for failure to comply with the requirements of the garnishment statutes. Clayton Kearney filed an Affidavit in support of the Motion to Dissolve on the same day that the Motion was filed, stating that he is the owner of the funds in the accounts, and Bing Kearney is not.

Plaintiff Regions Bank has filed Objections to the Report and Recommendation.

In the Status Report, Plaintiff Regions Bank advises:

USAmeribank

The Writ of Garnishment remains at issue as to judgment debtor Kearney, but not as to judgment debtors Seeger or Harris. Kearney, Harris and Seeger filed Claims of Exemption, but no money is owed to Seeger or Harris. Discovery confirmed money owed to Kearney. The Amended Status Report states that the Writ remains at issue as to Kearney, but not as to Seeger or Harris.

Bank of Tampa

The Writ of Garnishment remains at issue as to Kearney, Harris and Seeger pending discovery; no exemption has been filed and no motion to dissolve was filed. The Amended States Report states that the Writ is **not** at issue as to Kearney, Harris and Seeger.

Wells Fargo

The Writ of Garnishment remains at issue as to Kearney, Harris and Seeger pending discovery. Harris filed an untimely of exemption. Seeger and Kearney have not filed Claims of Exemption. The Amended Status Report states that the Writ is **not** at issue as to Kearney, Harris and Seeger.

Platinum Bank

The Answer of Platinum Banks states It is indebted to Kearney, but not to Harris or Seeger. Discovery confirmed the indebtedness to Kearney but not to Harris and Seeger. The Amended Status Report states that the Writ remains at issue as to Kearney, but **not** as to Harris and Seeger.

I. Standard of Review

 After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright,* 681 F.2d 732 (11th Cir.1982), *cert. denied,* 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo. Garvey v. Vaughn,* 993 F.2d 776, 779 n. 9 (11th Cir.1993). However, a district judge must make a *de novo* determination of those portions of the report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). District judges must "give fresh consideration to those issues to which specific objections have been made by a party." *Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga.,* 896 F.2d 507, 512 (11th Cir.1990) (internal citations omitted). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. *See Cooper–Houston v. S. Rwy. Co.,* 37 F.3d 603, 604 (11th Cir.1994); *Castro Bobadilla v. Reno,* 826 F.Supp. 1428, 1431–32 (S.D.Fla.1993), *aff'd,* 28 F.3d 116 (11th Cir.1994).

## II. Discussion

### A. Sequence of Events

As to Defendant Bing Kearney, Jr., the docket for this case includes the following:

### 1. USAmeribank Writ

| | |
|---|---|
| Dkt. 199 | Order granting issuance of Writ, filed 5/16/2013 |
| Dkt. 206 | Writ to USAmeribank returned executed, filed 5/20/2013, (Writ served on 5/17/2013) |
| Dkt. 211 | Certificate of Service filed 5/28/2013 (Writ, Motion, Notice) |
| Dkt. 212 | Answer of USAmeribank, filed 5/24/2013 |
| Dkt. 213 | Certificate of Service, filed 5/28/2013 (Answer, Notice) |
| Dkt. 218 | Claim of Exemption and Request for Hearing, filed 6/3/2013 |
| Dkt. 219 | Motion for Hearing on Claim of Exemption, filed 6/3/2013 |
| Dkt. 220 | Verified Reply to Claim of Exemptions, filed 6/4/2013 |
| Dkt. 255 | Motion to Dissolve of Bing Kearney, Jr., filed 6/18/2013 |
| Dkt. 266 | Affidavit—Bing Kearney, Jr., filed 7/3/2013 (056, 3695, 0129, 302, 020, accounts) |
| Dkt. 267 | Affidavit—Tonya Kearney, filed 7/3/2013 (056, 3695, 0129 accounts) |
| Dkt. 268 | Affidavit—Justin Rowlson, filed 7/3/2013 |
| Dkt. 270 | Affidavit—Clayton Kearney, filed 7/3/2013 (302 and 020 accounts) |
| Dkt. 272 | Affidavit—Amber Proctor, filed 7/3/2013 |
| Dkt. 273 | Response to Motion to Dissolve, filed 7/3/2013 |
| Dkt. 300 | Supplemental Memorandum, filed 7/19/2013 |

### 2. Platinum Bank Writ

| | |
|---|---|
| Dkt. 241 | Order granting issuance of Writ, filed 6/11/2013 |
| Dkt. 246 | Writ to Platinum Bank returned executed, filed 6/12/2013 (Served 6/11/2013) |
| Dkt. 248 | Certificate of Service, filed 6/12/2013 (Motion, Writ, Notice) |
| Dkt. 249 | Answer of Platinum Bank, filed 6/14/2013 |
| Dkt. 252 | Certificate of Service, filed 6/17/2013 (Answer, Notice) |
| Dkt. 255 | Motion to Dissolve of Bing Kearney, Jr., filed 6/18/2013 |
| Dkt. 261 | Reply to Answer, filed 6/28/2013 |
| Dkt. 269 | Affidavit—Bing Kearney, Jr., filed 7/3/2013 (6601, 7920, 3201, 2401 accounts) |
| Dkt. 271 | Affidavit—Clayton Kearney, filed 7/3/201 (6601, 7920, 3201, 2401 accounts) |
| Dkt. 273 | Response to Motion to Dissolve, filed 7/3/2013 |
| Dkt. 281 | Amended Certificate of Service, filed on 7/5/2013 |

### B. Notice Issues

Defendant Kearney moved to dissolve the writs because Plaintiff Regions did not comply with Florida's statutory procedure, Ch. 77, *Florida Statutes.* As to the US-Ameribank Writ, Defendant Kearney argued that he was deprived of the service of the Notice to Defendants, which outlines the rights to exemptions from garnishment. Defendant Kearney denied receipt of the notice required by Ch. 77.041(2) as of the time the Answer of USAmeribank was filed (5/24/2014). Defendant Kearney argues that the Notice to Defendant was served late, and did not comply with Ch. 77.041(1), in that the categories for which a claim of exemption can be asserted have been updated from the previous limit of $500 to $750 or less in earnings. Defendant Kearney further denied that Defendant Kearney received a Notice that Defendant could move to dissolve the Writ. Defendant Kearney argued that his interest in protecting his assets will be unconstitutionally deprived without dissolution of the writ and the requirement that Plaintiff properly serve the writ according to the procedure required by the Florida Statutes.

### 1. Region's Objections

Regions does not dispute that the mailing of the notice of the USAmeribank writ and answer were not within the time periods set out in Sec. 77.041(2) and 77.055, *Florida Statutes.* Regions Bank argues that the legal effect accorded to Regions' delay in complying with the notice requirements of Sec. 77.041(2) and 77.055, *Florida Statutes,* in the Report and Recommendation is erroneous. Regions characterizes the legal conclusion of the assigned Magistrate Judge as "automatic dissolution" of the writ for failure to comply with the procedural requirements of the Garnishment Statute. Regions argues that automatic dissolution of a writ of garnishment is not supported by the text of the Garnishment Statute and the clearly expressed intent of the Florida legislature.

### a. Ch. 77.041(2), *Florida Statutes*

Ch. 77.041(2), *Florida Statutes* (Notice to individual defendant for claim of exemption from garnishment; procedure for hearing) provides:

> (2) The plaintiff must mail, by first class, a copy of the writ of garnishment, a copy of the motion for writ of garnishment, and, if the defendant is an individual, the "Notice to Defendant" to the defendant's last known address within 5 business days after the writ is issued or 3 business days after the writ is served on the garnishee, whichever is later. However, if such documents are returned as undeliverable by the post office, or if the last known address is not discoverable after diligent search, the plaintiff must mail, by first class, the documents to the defendant at the defendant's place of employment. The plaintiff shall file in the proceeding a certificate of such service.

■ Pursuant to Fed.R.Civ.P. 69(a), in proceedings supplementary to and in aid of judgment or execution, the procedure followed must accord with the procedure of the state in which the Court is located. The Court notes that, under Florida law, garnishment is a special statutory proceeding. *BNP Paribas v. Wynne,* 944 So.2d 1004, 1006 (Fla. 4th DCA 2005). In a special statutory proceeding, "the form, content, procedure, and time for pleading in all special statutory proceedings shall be as prescribed by the statutes governing the proceeding unless [the Florida Rules of Civil Procedure] specifically provide to the contrary." Rule 1.010, Fla. R.C.P.; *Federated Stores Realty, Inc. v. Burnstein,* 392 So.2d 573, 574 (Fla. 4th DCA 1980).

■ The procedures outlined in Ch. 77, *Florida Statutes* govern this garnishment proceeding. Garnishment statutes must be strictly construed. *Robert C. Malt & Co. v. Colvin,* 419 So.2d 745 (Fla. 4th DCA 1982) (acknowledging strict construction but looking to substance, not form, on facts of case); *Florida Power & Light v. Crabtree Construction, Inc.,* 283 So.2d 570 (Fla. 4th DCA 1973) (permitting amendment to answer to garnishment, where justice so requires; reversing judgment against garnishee and remanding for further proceedings). In another case involving garnishment under Florida law, *Orix Financial Services v. Water and Sewer Utility Construction, Inc., et al.,* Case No. 3:06–CV–312–HES–MCR, (Dkt. 28, p. 7), the Court expressed that it would be better to decide the case on its merits rather than based on a technicality that did not affect either party. In *Orix,* the defendants filed Affidavits of Exemption which indicated that defendants believed their accounts with Vystar Credit Union were exempt from garnishment because they were held as tenancies by the entireties, because monies in one of the accounts were received from Social Security, and because an account was established as a Trust Account. The

Court noted that the affidavits provided the information required by Ch. 77.041(1), F.S., but required the defendants to comply with the technical requirements of the statute by filing a Claim of Exemption. (Case No. 3:06–CV–312–HES–MCR, Dkt. 21). The plaintiff filed a response to the Answer of the garnishee, Vystar, stating objections to the defendants' exemptions. (Dkt. 10). Defendants requested entry of summary judgment because the plaintiff did not file a written objection to the Claim of Exemption, and because plaintiff did not file a sworn written statement that contests defendants' Claims of Exemptions in accordance with Ch. 77.041(3), F.S. (Dkt. 25). The Court chose to treat the defendants' affidavits of exemption as their Claims for Exemption, and denied defendants' motion for summary judgment, finding that the response to garnishee's Answer was a timely objection to defendants' affidavits of exemption. The Court denied the plaintiff's request that all exemptions other than those asserted in the Claim of Exemption (Dkt. 22) be deemed waived, noting that if the Court were to accept the plaintiff's arguments as to waiver, the writ would be dissolved pursuant to Ch. 77.041(3), F.S., as the plaintiff did not file a response to the Claim of Exemption. As to the failure of interested third parties (defendants' wives and Rodgers Revocable Trust) to file motions to dissolve pursuant to Ch. 77.07, F.S., the Court found that defendants' motions to dissolve sufficiently put the plaintiff on notice as to all parties having potential interests in the accounts. (Dkt. 28). Defendants appealed the decision of the Court, which was affirmed by the Eleventh Circuit Court of Appeals, *Orix Financial Services, Inc. v. Water & Sewer Utility Construction, Inc.*, 274 Fed. Appx. 773 (11th Cir.2008) (unpublished).

The procedures outlined in Ch. 77.041 are designed to provide notice to a defendant of the available statutory and consti-tutional exemptions, and to provide a procedure to promptly obtain a hearing. The Court notes the interplay of Ch. 222, *Fla. Stat.*, Method of Setting Apart Homestead and Exemptions, and Ch. 77, *Fla. Stat.* Ch. 222.12, *Fla. Stat.*, Proceedings for Exemption, permitting the head of family exemption to be asserted by affidavit, has now been repealed, effective July 1, 2013, leaving Ch. 77.041 the exclusive procedure for asserting exemptions from garnishment.

■■■ The USAmeribank Writ was served on 5/17/2013. As of 5/20/2013, Defendant Kearney had actual notice of the Writ. (Dkt. 220–1). On 6/3/2013, Defendant Kearney filed Defendant's Claim of Exemption and request for hearing. Defendant Kearney did not assert any of the statutory or constitutional exemptions under Florida law on the Notice. Defendant Kearney asserted only that the accounts were held as tenancy by the entireties. Under Florida law, a judgment against one spouse is not enforceable against property owned by both spouses as tenants by the entireties. Each spouse is "seized of the whole", and an attempted conveyance of one spouse's interest in a tenancy by the entireties is ineffective. Florida law recognizes the common law immunity from suit as an exemption. *In re Buonopane*, 359 B.R. 346, 347 (Bankr.M.D.Fla.2007) (citing *Vaughn v. Mandis*, 53 So.2d 704 (Fla.1951) and *Andrews v. Andrews* 155 Fla. 654, 21 So.2d 205, 206 (1945)).

Defendant Kearney was not prejudiced by late mailing of the Ch. 77.041(2) Notice or any incorrect format. Ch. 77.041(2), F.S., does not expressly require dissolution of the Writ. This factual scenario is distinguishable from a factual scenario where the statute itself requires automatic dissolution of the writ; e.g. Ch. 77.041(3), F.S., directing automatic dissolution where a Claim of Exemption is filed, and is not

answered within the time specified by the statute.

■ Defendant Kearney complains that Plaintiff deprived Defendant of his property without due process. A claim for deprivation of property without due process under the Fourteenth Amendment is not one for violation of substantive due process; rather it is a claim for violation of procedural due process. *Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir.1991) (citing *Bd. Of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); cf. *Silva v. Bieluch,* 351 F.3d 1045, 1047 (11th Cir.2003); *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc).

■ In general, property rights are created by state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Fundamental rights are those rights created by the Constitution. *DeKalb Stone, Inc. v. County of DeKalb, Ga.,* 106 F.3d 956, 959 n. 9 (11th Cir.1997). The Due Process clause of the Fourteenth Amendment to the U.S. Constitution provides two different kinds of constitutional protections: substantive due process and procedural due process. The substantive component of the Due Process clause protects rights that are fundamental. *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994.) (executive deprivation of state-created right held not a substantive due process claim). Procedural due process claims involve: 1) whether there is enough of a property interest at stake to be "protectable"; 2) the amount of process that should be due for that protectable right; and 3) the process actually provided, be it before or after the deprivation. *Greenbriar Village, LLC v. Mountain Brook, City,* 345 F.3d 1258, 1263 (11th Cir.2003). In *McKinney v. Pate,* the Eleventh Circuit Court of Appeals notes that one distinction between substantive and procedural due process claims is that a substantive due process claim is complete when it occurs, and involves compensatory damages for the value of the deprived right, but a procedural due process claim is not complete unless and until the State fails to provide due process, and involves equitable remedies, i.e. curing the procedural deprivation by providing a later procedural remedy. *McKinney* at 1557–1558. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms,* 438 F.3d 1336, 1347 (11th Cir.2006)

■ In general, due process of law requires that a deprivation of property be preceded by notice and a hearing. This case involves a post-judgment garnishment proceeding. Florida's post-judgment garnishment procedures have been held to be constitutional. *Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355 (5th Cir. 1976). Defendants' interests in their money and financial accounts is a protected property interest. Defendants and all interested parties are entitled to due process under Fourteenth Amendment standards i.e. proper notice and a full and fair opportunity to be heard, to be determined on a case-by-case basis. "Proper notice" must be reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford an opportunity them an opportunity to present their objections. The notice must convey the required information, and must afford a reasonable time for those interest-

ed to make their appearance. Unless due process is accorded to all parties, the Court could not enter a valid final judgment in this garnishment proceeding. *See,* e.g. *Patino v. El Rey Del Chivito Corp.,* 2013 WL 6670428 (S.D.Fla. Dec. 18, 2013) (citing *Cruise Control v. Tyler,* 577 So.2d 709, 710 (Fla. 2d DCA 1991) (per curiam)). The statutory procedures for notice to a garnishee and interested parties appear calculated to afford proper notice. The Court also notes that Florida law recognizes a cause of action for wrongful garnishment. Procedural due process violations do not exist when adequate state remedies are available. In this case, the issue is whether the failure to comply with available state garnishment procedures results in the denial of due process. Due process is a flexible concept, tailored to the facts of the case to which it is applied; the denial of procedural due process can be cured by granting an equitable remedy. If there is a procedural due process violation in the factual scenario before the Court, allowing the opportunity to cure the alleged violation may be appropriate.

### b. Sec. 77.055, *Florida Statutes*

Sec. 77.055, *Florida Statutes* (Service of garnishee's answer and notice of right to dissolve writ), provides:

> Within 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired, the plaintiff shall serve, by mail, the following documents: a copy of the garnishee's answer, and a notice advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice if any allegation in the plaintiff's motion for writ of garnishment is untrue. The plaintiff shall serve these documents on the defendant at the defendant's last known address and any other address disclosed by the garnishee's answer and on any other person disclosed in the garnishee's answer to have any ownership interest in the deposit, account, or property controlled by the garnishee. The plaintiff shall file in the proceeding a certificate of such service.

USAmeribank's Answer was filed on 5/24/2013. The Court notes that Plaintiff Regions included the Notice pursuant to Sec. 77.055, F.S., to Defendant Kearney that Defendant Kearney must move to dissolve the writ within twenty days after the date in the certificate of service, only within the Certificate of Service, and attached a Sec. 77.041(1) Notice. (Dkt. 213). The Certificate of Service was provided to counsel for Defendants Kearney, Harris and Seeger on 5/28/2013, not served on Defendant Kearney at his last known address. Defendant Kearney moved to dissolve on 6/18/2013.

Defendant Kearney timely moved to dissolve the USAmeribank Writ. Defendant Kearney was not prejudiced by Regions' noncompliance with Sec. 77.055, F.S. Defendant Kearney is entitled to procedural due process; the Court, by requiring compliance with statutory garnishment procedures as to notice and a hearing, Unless all parties to the final judgment of garnishment are accorded due process, the Court could not enter a valid final judgment in this garnishment proceeding. *See,* e.g. *Patino v. El Rey Del Chivito Corp.,* 2013 WL 6670428 (S.D.Fla.12/18/2013) (citing *Cruise Control v. Tyler,* 577 So.2d 709, 710 (Fla. 2d DCA 1991) (per curiam); *T–Jett Enterprises v. Ernest and Stewart, Inc.,* 543 So.2d 390 (Fla. 3d DCA 1989) (reversing and remanding final judgment of garnishment due to presence of factual disputes and noting noncompliance with F.S. § 77.055 is sufficient basis for reversal)). The Court notes that there is a dispute

between Plaintiff Regions, Defendant Bing Kearney and interested party Tonya Kearney as to the ownership of the 056 account, which is addressed below. There are other USAmeribank accounts and other interested parties as to the additional accounts. Clayton Kearney has filed an Affidavit in support of the Motion to Dissolve, asserting that he is the owner of the funds in the 020 and 302 accounts. The Claim of Exemption, and Reply to Claim of Exemption show that there are disputed issues as to these accounts. The Affidavits of third parties Tonya Kearney and Clayton Kearney would require a trial as to the disputed claims pursuant to Sec. 77.16, F.S. Because of the recommendation to dissolve the Writs, the assigned Magistrate Judge did not address the ownership of the funds in the other accounts in the Report and Recommendation.

c. Notice to Co–Owners Not Disclosed in Answers

1. Region's Objections

Plaintiff Regions objects to the R & R to the extent that it finds that Plaintiff Regions acted in error by not providing notice to co-owners of bank accounts who were not disclosed in USAmeribank's Answer (Dkt. 212). Plaintiff Regions argues that F.S. § 77.055 required Regions to serve notice documents on "any other person disclosed in the garnishee's answer to have any ownership interest in the deposit, account, or property controlled by the garnishee." Regions argues that it complied with the statute, that all of the other interest holders had actual notice of the garnishment and almost all of them filed affidavits to timely assert their interests, in accord with their statutory obligation. F.S. § 77.16.

Plaintiff Regions argues that the R & R disregards the effect of USAmeribank's Answer, and erroneously looks to the let-ter of May 20, 2013 from Bing Kearney to Regions' counsel as additional notice that there were co-owners of the Kearney accounts. Regions further argues that the co-owners were on actual notice of the garnishment, and filed affidavits asserting an ownership interest, but did not file a motion to dissolve the writs, in accord with F.S. § 77.07(2).

2. Discussion

The Court notes that, as to Defendant Kearney, Garnishee USAmeribank's Answer states:

1. At the time of this Answer and at the time of the service of the Writ of Garnishment, and at all times between such dates, Garnishee was and still is indebted to the Defendant,

**Bing Charles W. Kearney, Jr., in the amount of $700,022.29 . . . .**

2. Garnishee did not have in its hands, possession or control, any goods, monies, chattels or effects of Defendant other than those set forth above in paragraph 1 at the time of the services of the Writ of Garnishment or at the time of this Answer or at any time between such periods, and does not know of any other persons indebted to the Defendant or who may have any of the effects of Defendants in its hands

(Dkt. 212).

In contrast, the Answer of Platinum Bank to the Writ of Garnishment reveals account numbers, co-owners of each account, and amounts in each account (Dkt. 249). In a letter dated May 20, 2013, Defendant Kearney advised Regions that the USAmeribank accounts were held as tenancy by the entireties (Dkt. 220–1). In response, on May 20, 2013, counsel for Regions attempted to set up a conference with counsel for Defendant Kearney and the Kearneys to obtain more information.

(Dkt. 220–2). In filing of Defendant Kearney's Claim of Exemption (Dkt. 218), Defendant Kearney asserted that the USAmeribank accounts were held as tenancy by the entireties. On May 21, 2013, Regions served discovery on USAmeribank to obtain information as to the Kearney accounts; in the Motion for Protective Order, USAmeribank states it did not receive the discovery documents until June 28, 2013 (Dkt. 246). Regions filed an Amended Certificate of Service to reflect service on USAmeribank as of 5/21/2013 (Dkt. 265). According to the Response to Motion for Protective Order, USAmeribank referred Regions' request for production to outside counsel, resulting in a delay in production. The Court notes that Regions did not receive USAmeribank's response to discovery prior to the initial hearing on 7/8/2013. The response to discovery was filed on 7/9/2013. (Dkt. 286). Regions moved to reopen the evidence (Dkt. 288), which was granted.

The Court notes that USAmeribank's Answer does not comply with Ch. 77.06(2), *Fla. Stat.*, which provides:

> (2) The garnishee shall report in its answer and retain, subject to the provisions of s. 77.19 and subject to disposition as provided in this chapter, any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee; and the answer shall state the name or names and addresses, if known to the garnishee, of the defendant and any other persons having or appearing to have an ownership interest in the involved property.

The signature cards as to Defendant Kearney's accounts reveal names and addresses of other persons having, or appearing to have, an ownership interest in the involved property.

 Ch. 77.07(2), *Fla. Stat.*, contemplates notice to other owners as disclosed in the garnishee's Answer. What USAmeribank included in its Answer was within USAmeribank's control, not Plaintiff Regions' control. Until service of the Answer and Notice of right to move to dissolve within twenty days of service, the right of the other owners of the garnished accounts to move to dissolve is not triggered. *Rudd v. First Union Nat. Bank of Florida,* 761 So.2d 1189 (Fla. 4th DCA 2000). The Court notes that the letter of May 20, 2013 raises the issue of more than one owner of the USAmeribank accounts, and Regions subsequently attempted to obtain more information as to the USAmeribank accounts through discovery. Eventually, Regions obtained documentation of the ownership of the USAmeribank accounts.

Given the required strict construction of Ch. 77, *Fla. Stat.*, Plaintiff Regions was in compliance with Sec. 77.055 in serving the statutory notice only to Defendant Kearney, as no other owner is revealed in USAmeribank's Answer. Regions argues that the other owners of the accounts had actual notice of the Writ, could have filed a Claim of Exemption and moved to dissolve the Writ. In *Navon, Kopelman & O'Donnell, P.A. v. Synnex Information Technologies, Inc.,* 720 So.2d 1167 (Fla. 4th DCA 1998) (denying petition for writ of certiorari; reviewing whether procedural due process was afforded and whether the court observed the essential requirements of the law), the circuit court affirmed the county court's denial of a motion to dissolve the writ of garnishment, noting that the statutory right to move to dissolve is granted only to the defendant and any other person having an interest in the property, as disclosed by the garnishee's answer. The circuit court also noted that the statutes contemplate that other persons who claim an ownership interest in the property in the hands of the garnishee can assert their

claim by filing an affidavit pursuant to Ch. 77.16, *Fla. Stat.* In this case, other interested parties Tonya Kearney and Clayton Kearney filed affidavits that would require resolution at trial. A jury trial may be waived in favor of a bench trial.

In *Gigliotti Contracting North, Inc. v. Traffic Control Products of North Florida, Inc.*, 788 So.2d 1013 (2001), the Second District Court of Appeals found that the trial court's denial of intervention without leave to comply with the required statutory process to a subcontractor who claimed an interest in funds being garnished by a contractor's judgment creditor, but who did not file an affidavit, denied the subcontractor its due process right to have its meritorious claim adjudicated on the merits. The Court cannot enter a valid final judgment in this garnishment proceeding unless all owners have notice and an opportunity to be heard. Service of the garnishee's answer and notice of the right to move to dissolve establishes that all owners of the garnished accounts have been accorded due process.

 The Court sustains Plaintiff's objections to the Report and Recommendation as to all notice issues. To the extent that Defendant Kearney's Motion to Dissolve is based on the failure to comply with the statutory procedures required by Ch. 77, *Fla. Stat.*, the Court denies the Motion to Dissolve. The Court recognizes that there are cases which hold that strict compliance with statutory garnishment procedures is required, and noncompliance requires that a writ of garnishment be dissolved. *Cullen v. Marsh*, 34 So.3d 235 (Fla. 3d DCA 2010). There are other cases which recognize that strict compliance with statutory garnishment procedures is required, but where justice requires, considering the facts of the case, additional proceedings to cure a technical violation have been permitted. The Court notes that courts recognize that a judg-

ment creditor has due process rights. *Akerman, Senterfitt & Eidson, P.A. v. Value Seafood, Inc.*, 121 So.3d 83 (Fla. 3d DCA 2013). The Court is reluctant to elevate form over substance, but is concerned with documenting adequate notice to all interested parties. Technical violations of the statutory garnishment procedures can be cured by re-serving the Writ of Garnishment on USAmeribank. The filing of USAmeribank's Answer which complies with Sec. 77.06, F.S., would trigger Plaintiff Regions' opportunity to serve Notices in accordance with Sec. 77.055, F.S. The necessity of curing technical violations of service could be avoided by filing a knowing and voluntary waiver of service of Notices.

As to the Writ garnishing accounts at Platinum Bank, the Answer of Platinum Bank was not deficient. The issue of the ownership of the funds in those accounts will be determined at trial, or on summary judgment. The Report and Recommendation did not include a determination as to the ownership of the funds in the accounts.

### C. Claim of Exemption

In the R & R, the assigned Magistrate Judge concluded that the 056 account was a tenancy by the entireties ("TBE") account, in which each spouse held an indivisible interest in all funds in the account. In his Claim of Exemption, Defendant Kearney stated:

> Other exemptions as provided by law. Section 655.79, Florida Statutes—tenancy by the entireties account with my wife. See also *Beal Bank, SSB v. Almand and Associates*, 780 So.2d 45 (Fla. 2001) and *BB & T v. Maxwell*, 2012 WL 4078407 (M.D.Fla.2012).
>
> I request a hearing to decide the validity of my claim........

(Dkt. 218).

### 1. Regions' Objections

Plaintiff Regions objects to the Report and Recommendation as to application of

the *Beal Bank* presumption, and failure to follow *Wexler v. Rich*, 80 So.3d 1097 (Fla. 4th DCA 2012). As to the 056 account, Plaintiff Regions argues that: 1) there was an express disclaimer of the TBE form of account; 2) that evidence of Defendant Kearney's intent is not relevant or sufficient to establish that a TBE account was formed; 3) that Defendant Kearney did not establish by a preponderance of the evidence that the 056 account was intended to be a TBE account; 4) that the Court inappropriately relies on a subsequent attempt to open a TBE account on July 8, 2013 at USAmeribank in its determination as to the 056 account opened in 2010; and 5) Defendant Kearney is the sole owner of all of the funds in the 056 account. Plaintiff Regions also argues that the R & R did not discuss the ownership of the remaining Kearney Accounts at USAmeribank, and did not discuss the ownership of the Platinum Bank Accounts.

## 2. Statement of Facts

Plaintiff Regions sought to garnish six Kearney accounts at USAmeribank.

In the Affidavit (Dkt. 266) supporting his Claim of Exemption, Defendant Kearney states he serves as a "convenience signatory" as to the accounts jointly owned with his son and his brother. (Dkt. 266, p. 4, par. 14). As to the 056 account, Defendant Kearney asserts that the account is held jointly with wife Tonya Nuhfer Kearney, and at all times the funds in the account were intended to be held by the entireties. (Dkt. 266, p. 2, par. 4). Defendant Kearney asserts that the 056 account (money market), 3695 account (personal checking) and 0129 account (personal savings) were to be opened as "joint accounts tenancy by the entireties". (Dkt. 266, p. 2. par. 6).

The USAmeribank accounts include:

| | |
|---|---|
| Account 056 (money market) | Owned by Bing Kearney, and wife Tonya Nuhfer Kearney |
| Account 3695 (personal checking) | Owned by Bing Kearney and wife Tonya Nuhfer Kearney |
| Account 0129 (personal savings) | Owned by Bing Kearney and wife Tonya Nuhfer Kearney |
| Account 302 | Owned by son Clayton W. Kearney and Bing Kearney |
| Account 020 | Owned by son Clayton W. Kearney and Bing Kearney |
| Account 7939 | Owned by brother Bryan G. Kearney and Bing Kearney |

Plaintiff's Exhibits include the signature cards for the above accounts. According to Exhibit 1 (dated 10/26/2011, revised 11/13/2011), the owners of the 3695 account are Bing Kearney, Jr., Tonya Nuhfer Kearney, Charles Wesley Kearney, III and Clayton W. Kearney. According to Exhibit 2 (dated 12/1/2010), the owners of the 056 account are Bing Kearney, Jr. and Tonya Nuhfer Kearney. According to Exhibit 3, the owners of the 302 account (opened 11/15/2011) are Clayton W. Kearney, Bing Kearney, Jr. and Charles Wesley Kearney, III. According to Exhibit 4 (dated 2/10/2012), the owners of the 7939 account are Bryan G. Kearney, and Bing Kearney, Jr. According to Exhibit 5, the owners of the 020 account (opened 11/15/2011) are Clayton W. Kearney, Bing Kearney, Jr. and Charles Wesley Kearney,

III. According to Exhibit 6, the owners of the 0129 account (opened 11/23/2011) are Bing Kearney, Jr., Tonya Nuhfer Kearney, Charles Wesley Kearney, III and Clayton W. Kearney.

The Court notes the following testimony as to the 056 account at the Evidentiary Hearing:

1. Bing Kearney testified that, knowing the IRS check was coming, his lawyers advised him to put the check in a "tenants by the entireties" ("T/E") account. (Dkt. 363, p. 46);

2. Bing Kearney testified that he went to the branch of USAmeribank on Whiting Street, and told them he wanted to open a T/E account. He signed the signature card and then took it with him for Tonya Kearney and Chase Kearney to sign. (Dkt. 363, p. 47), (Ex. 5 at hearing);

3. When Bing Kearney brought the signature card back, he was told that there can't be three people on a T/E account, and another signature card with the same account number was filled out. (Dkt. 363, p. 51), (Ex. 6 at hearing);

4. Tonya Kearney came in to the bank to sign the signature card. (Dkt. 363, p. 53);

5. The box for "Multiple–Party Account" was checked. The box for "Multiple Party Account–Tenancy by the Entireties" was not checked. When asked whether he observed that at the time he signed the signature card, Bing Kearney testified that he did not have his glasses on, so he signed where the [bank representative] put the X. "Said sign here. I cannot read without these glasses." (Dkt. 363, p. 54);

6. When asked whether he said anything to the lady he was dealing with at the bank, Bing Kearney testified: "Yes, it was to be a tenants by the entireties account. I clearly knew I needed an account tenants by the entirety." (Dkt. 363, p. 54);

7. The box for "Multiple Parties Account With Right of Survivorship" is checked. When asked whether he had any understanding of why the X was placed there and he was asked to initial it, Bing Kearney testified: "I didn't read it. The bank printed out a tenants by the entireties form, and I initialed where they said initial and I thought it was—I had filled out a tenants by the entireties form." (Dkt. 363, p. 55);

8. In a letter to Regions Bank dated May 20, 2013, Bing Kearney stated that "These accounts were opened by us as husband and wife, tenants by the entirety" (Dkt. 363, p. 62). Bing Kearney testified that, "after dealing with numerous lawyers in my vast history of recent litigation," the tenants by the entirety . . . . . . protects an account that's held jointly from a creditor against one of the parties, is roughly my understanding." (Dkt. 363, pp. 62–63);

9. When asked what steps he took prior to May 20, 2013 to address the issue of whether the account with significant funds from the IRS check was protected a tenants by the entireties account, Bing Kearney testified that in February, 2013, he had Jim Reed and Justin Rowlson call and verify that all the accounts were tenants by the entirety. (Dkt. 363, p. 63). After receiving the report, when asked whether he took any steps to alter the manner in which the 056 account was reflected on the books of USAmeribank, Bing Kearney testified that he didn't because it was tenants by the entirety in his mind. (Dkt. 363, p. 64);

10. Bing Kearney testified that two of his attorneys had given him specific instruction as to the IRS check, but his attorneys did not accompany him to USAmeribank. When asked whether he

showed them a copy of the signature card, Bing Kearney testified that US-Ameribank did not give him a copy of the signature card. Bing Kearney further testified that if he had asked for one, USAmeribank would have given it to him. (Dkt. 363, p. 194);

11. Bing Kearney testified that he did not ask for a copy of the signature card because he trusted the bank. (Dkt. 363, p. 195);

12. As to Exhibit 5, which Bing Kearney took with him for Chase Kearney and Tonya Kearney to sign, the Court inquired whether Bing Kearney had the opportunity to look at the boxes checked as to the type of account. Bing Kearney testified that "I had the opportunity to took up there, but obviously I didn't or I would [have] initialed it." (Dkt. 363, p. 197). The Court further inquired: "But in this instance you were the subject of lawsuits by then, December 2010?" (Dkt. 363, p. 197). Bing Kearney testified that he had a conversation with his counsel about being judgment-proof. (Dkt. 363, p. 198);

13. When asked whether, as to the particular account Bing Kearney signed on December 1, 2010, he thought the account was tenancy by the entireties, even though the box is filled out as a multiple party account, and there is no express claim on his part on the form as tenants by the entireties, Bing Kearney replied "Correct. It—exactly as though everybody that works at USAmeribank thinks [it] is tenancy by the entireties form" (Dkt. 363, p. 199). The Court stated: "But you knew the difference.? . . . . You knew the difference between . . . tenants by the entireties and a joint account?" Bing Kearney replied "Yes, . . . I did." (Dkt. 363, p. 199);

14. Bing Kearney testified that the signature card, Exhibit 6, was made available to him. (Dkt. 363, p. 201);

3. Discussion

056 Account—Personal Money Market

a. *Beal Bank, SSB v. Almand & Associates,* 780 So.2d 45 (Fla.2001)

In *Beal Bank, supra,* a creditor sought to garnish bank accounts that debtors held with their wives. The trial court dissolved the writs. The District Court of Appeal affirmed in part, reversed in part, and certified questions of great public importance. The Florida Supreme Court held that, as between the debtor and a third-party creditor (other than the financial institution into which the deposits have been made), if the signature card of the account does ' not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship. The Florida Supreme Court further held that the presumption adopted is one affecting the burden of proof pursuant to section 90.304, F.S. (2000), shifting to the creditor the burden to prove by a preponderance of the evidence that a tenancy by the entireties was not created. The Florida Supreme Court further held that the signature cards at issue did not disclaim the tenancy by the entireties or indicate another form of ownership, and disapproved *In re Guardianship of Medley,* 573 So.2d 892 (Fla. 2d DCA 1990) (signature card is for protection of bank and the convenience of the parties involved; does not affect ownership status of the account) to the extent that it is inconsistent with the Court's

holding. The Florida Supreme Court further held that if the Bank did not allow tenancy by the entireties form of ownership, the debtors could prove a tenancy by the entireties by extrinsic evidence.

In *Beal Bank, supra,* it was undisputed that the debtors' wives were not parties to the judgments Beal Bank was attempting to collect, or personally liable for the obligations. The Court used the term "signature card" to indicate the account document that the depositors sign and that sets forth the manner in which the depositors hold the account. The Court examined the terms of the signature cards for the various bank accounts. As to the signature card for the Barnett Bank account, the Court noted that the persons signing the card "acknowledge(s) receipt of and agree to the Rules and Regulations of the Bank for the account ... not limited to ... Barnett Bank's Welcome Brochure." Paragraph 16 of the Welcome Brochure provided:

> If account is designated a JOINT account, or if the names of two or more owners are joined by the word "or" or "and" on the signature card or in the title of the account, the Customer agrees that all sums now or hereafter deposited in the account are and shall be joint property owned by the Customer and any co-owners of the account as joint tenants with the right of survivorship and not as tenants in common or as tenants by the entireties ... Even if the Bank at the Customer's request titles the Customer's account as "Tenants by the Entireties" or receives oral or written notice that the Customer intends to treat the funds as being held as such, the Customer agrees that as between the Customer and the Bank, the Bank may treat the account like any other joint account and subject to all the terms and provisions set forth above.

In *Beal Bank,* the Florida Supreme Court began its analysis with an overview of the forms of legal ownership of property in Florida. As to tenancy by the entireties, the Court noted the six unities (possession, interest, title, time, survivorship and marriage), and further noted that only the creditors of both spouses may attach tenancy by the entireties property. Property held as tenancy by the entireties is not divisible on behalf of one spouse alone and cannot be reached to satisfy the obligation of only one spouse.

The Florida Supreme Court outlined the problems arising from applying different standards to personal property and real property, including much litigation as to intent, and problems of proof compounded by lack of uniform documentation. The Florida Supreme Court found that the adoption of a presumption in favor of tenancy by the entireties was appropriate:

> "The time has come for us to recognize a presumption in favor of tenancy by the entireties arising from joint ownership of bank accounts by husband and wife. Because this issue involves one arising from this State's common law and because the refusal to extend a presumption to personal property was a product of this Court's jurisprudence, we conclude that it is appropriate for use to recede from our prior case law ......
>
> Accordingly, we hold that as between the debtor and a third party creditor (other than the financial institution into which the deposits have been made), if the signature card does not expressly disclaim the tenancy by the entireties form a ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title and time and with right of

survivorship... The presumption we adopt is a presumption affecting the burden of proof pursuant to section 90.304, F.S. (2000), thus shifting the burden of proof to the creditor to prove by a preponderance of the evidence that a tenancy by the entireties was created......"

The Florida Supreme Court discussed the effect of express statements of intent and express disclaimers on the signature card on the presumption adopted:

"....Although we recede from *Hector Supply Co.*, we agree with the statement in *Hector Supply Co.* that an express designation on the signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership......

In addition, just as a signature card can contain an express statement that a tenancy by the entireties was intended, so too can a signature card contain an express disclaimer that a tenancy by the entireties was not intended. An express disclaimer can take the form of an express statement signed by the depositor that a tenancy by the entireties was not intended, coupled with an express designation of another form of legal ownership. Alternatively, an express disclaimer of an intent not to hold the account as a tenancy by the entireties arises if the financial institution affirmatively provides the depositors with the option on the signature card to select a tenancy by the entireties among other options, and the depositors expressly select another form of ownership option of either a joint tenancy with right of survivorship or a tenancy in common.......

......[A] statement on the signature card that the bank account titled in the name of a husband and wife is held as a joint tenancy with right of survivorship does not alone constitute an express disclaimer that the account is not held as a tenancy by the entireties (citations omitted).......

Thus, if a signature card does not expressly disclaim a tenancy by the entireties form of ownership, a rebuttable presumption arises that a tenancy by the entireties exists provided that all the other unities necessary for a tenancy by the entireties are established. However, if a signature card expressly states that the account is not held as a tenancy by the entireties and another form of legal ownership is expressly designated, no presumption of a tenancy by the entireties arises. Absent evidence of fraud, this express disclaimer would end the inquiry as to whether a tenancy by the entireties was intended. However, if the debtor establishes that the financial institution did not offer a tenancy by the entireties form of account ownership or expressly precluded that form of ownership, then the debtor may prove by other evidence an intent that the debtor and his or her spouse held the account as a tenancy by the entireties. In this circumstance, no presumption arises and the debtor has the burden of establishing a tenancy by the entireties by a preponderance of the evidence. We thus disapprove of the statement in *Medley*, 573 So.2d at 900, that because a signature card executed between a depositor and a bank is exclusively for the "protection" of the financial institution and the "convenience" of the parties involved, the signature card does not affect the ownership status of the account, to the extent that statement is inconsistent with our holding."

b. Ch. 655.79, F.S.

Deposits and accounts in two or more names; presumption as to vesting on death.

## 1. Background

■ Joint account statutes create a statutory right of survivorship that is not dependent on establishing any of the common law elements necessary to create a joint tenancy with right of survivorship or to make a present gift. Joint account statutes relate only to the right of survivorship and bank protection, and have no effect on the ultimate ownership rights or interests of the respective parties to the particular joint account as between themselves, during their lives. *See Drozinski v. Straub*, 383 So.2d 301 (Fla. 2d DCA 1980) (citing *Constance v. Constance*, 366 So.2d 804 (Fla. 3d DCA 1979)).

### A. Savings Associations

Prior to 1992, as to joint bank accounts, there was a conclusive presumption as to **the right of survivorship on death of a depositor, not as to ownership rights in general,** and only in actions in which the savings association or the survivor(s) was a party. Ch. 665.063. *Fla. Stat.* (1991). Ch. 665.063, *Fla. Stat.*, and its conclusive presumption applied only to savings association accounts opened in such form that the money in the account was payable to the survivor(s). Ch. 665.063, *Fla. Stat.*, was repealed effective July 1, 1992.

### B. Banks

The 1971 Legislature enacted Ch. 659.291, *Fla. Stat.*, the predecessor to Ch. 658.56, *Fla. Stat.* (1991), providing that, in the absence of proof of fraud, undue influence, or clear and convincing proof of a contrary intent, the opening or maintenance of an account at a bank in the names of two or more persons when the funds on deposit were payable to one or more of them or to the surviving account holder or holders, created a rebuttable presumption that such persons intended that the account balance vest in the surviving account holders on the death of any of them. The statute further provided that, in the absence of such proof, the account balance would vest in the surviving account holders. The statute created a presumption that the creator of the joint account intended that all funds become the sole property of the joint account holder on the death of the depositor. *Davis v. Foulkrod*, 642 So.2d 1129 (Fla. 4th DCA 1994). Ch. 658.56, *Fla. Stat.*, did not apply to accounts held by husband and wife as tenants by the entireties. *First National Bank of Leesburg v. Hector Supply Co.*, 254 So.2d 777 (Fla.1971), receded from on other grounds, 780 So.2d 45. The statute and its rebuttable presumption of survivorship were applicable only when the documentation contained language indicating survivorship. *Merkle v. Cannata*, 642 So.2d 811 (Fla. 2d DCA 1994).

■ In exchange for the statutory burden of having to prove by clear and convincing evidence that survivorship was not intended by the depositor, Ch. 658.56, *Fla. Stat.*, permitted the estate to introduce parol evidence. Even in cases in which there is no ambiguity and the account documents clearly indicate that survivorship is intended, the depositor's estate may introduce parol evidence to prove that survivorship was not intended. *Caputo v. Nouskhajian*, 871 So.2d 266 (Fla. 5th DCA 2004).

### C. Consolidated Statute

In 1992, the Legislature repealed Ch. 658.56. *Fla. Stat.*, and Ch. 665.063, *Fla. Stat.*, and enacted Ch. 655.79. *Fla. Stat.*, applicable to all financial institutions. Under Ch. 655.79, any account in the names of two or more persons creates a presumption that such persons intended to provide that, on the death of any one of them, all rights in the account vest in the surviving person or persons, unless otherwise ex-

pressly provided in the contract, agreement, or signature card executed in connection with the opening or maintenance of the account. *Mulato v. Mulato,* 705 So.2d 57 (Fla. 4th DCA 1997). The statute further provides that the presumption may be overcome only by proof of fraud, undue influence, or clear and convincing proof of a contrary intent and that, in the absence of such proof, on the death of any such person, all rights in the account vest in the surviving person or persons, notwithstanding the absence of proof of donative intent or delivery, possession, dominion, control, or acceptance by any person, or that the statute may cause a vesting or disposition of property or rights therein which is testamentary in nature, which, except for the statute, would or might otherwise be void-able.

Under Ch. 655.79, *Fla. Stat.,* the common law doctrine of the right of survivorship, which was generally abolished as to real and personal property by Ch. 689.15, *Fla. Stat.,* is reinstated as to accounts at financial institutions. A survivorship account may now be created by merely opening an account in two or more names, notwithstanding the absence of language indicating survivorship. A multiple party account is presumed to be a survivorship account even though the signature card and other account documentation pertaining to the account include no indication of that consequence. Ch. 655.79, *Fla. Stat.,* substitutes a rebuttable presumption of survivorship for the conclusive presumption of survivorship that previously governed survivorship accounts at savings associations, shifting the burden of proof to the estate to prove by clear and convincing evidence that survivorship was not intended. *In re Estate of Combee,* 601 So.2d 1165 (Fla.1992).

After the Florida Supreme Court's decision in *Beal Bank, SSB v. Almand &* *Associates,* 780 So.2d 45 (Fla.2001), the Legislature amended Ch. 655.79(1), F.S., to provide that: "any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety **unless otherwise specified in writing."**

### D. This Case

■ The Court has examined the signature card for the 056 account. (Copy attached) (Exhibit 2). The signature card is a contract. A general deposit is a loan by the depositor to the bank. The relationship created by a deposit contract is that of debtor (bank)-creditor (depositor), in the absence of an agreement showing some other relationship. The debtor/creditor relationship is an arms-length relationship. The Court notes that there was testimony at the Evidentiary Hearing that Bing Kearney was an established customer of USAmeribank, which had opened many accounts for Bing Kearney. Bing Kearney testified that he trusted USAmeribank as to the type of ownership of 056 account. A fiduciary relationship implied in law is premised on the specific factual situation surrounding the transaction and the relationship of the parties. *Capital Bank v. MVB,* 644 So.2d 515 (Fla. 3d DCA 1994). The evidence offered does not establish the presence of special circumstances that would transform the arms-length relationship between debtor and creditor to a fiduciary relationship, including extra services rendered to a customer, the receipt of greater economic benefit than from a typical transaction, or exercise of extensive control. The transaction with the bank included the opening of a checking account. Bank employees testified that the customer specifies what type of account the customer wants. The customer is required to sign the signature card which establishes the ownership of the account. Bing Kearney testified that he signed the

signature card, and had an opportunity to read it. Bing Kearney further testified that after the account was opened he took steps to determine how all the accounts were held.

■ Under Florida law, contract interpretation is generally a question of law. *Lawyers Title Insurance, Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995). Florida law requires that a contract be construed according to its clear and unambiguous terms. *In re Construction Contractors of Ocala, Inc.*, 196 B.R. 188, 192 (Bankr.M.D.Fla.1996). The initial determination of whether a contract is ambiguous is a question of law. *Strama v. Union Fid. Life Ins. Co.*, 793 So.2d 1129, 1132 (Fla. 1st DCA 2001). In the absence of an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls. *In re Atkins*, 228 B.R. 14, 18 (Bankr.M.D.Fla. 1998). Questions of fact arise only if there is an ambiguity in a contract term. *Lawyers Title*, 52 F.3d at 1580.

■ The signature card for the' 056 account is laid out in a "menu" format. As to ownership of the account-consumer purpose, and rights at death, the form includes a box to be checked to indicate a selection, a blank line providing room for initials, then words identifying the selection, or a blank line to insert information. As to ownership of the account, the choices available are: single-party account, multiple-party account, multiple-party account-tenancy by the entireties ("TBE"), trust— separate agreement dated [*blank*], and a nonspecified option (blank line). Defendant Kearney initialed "multiple-party account." As to the rights at death section, the menu choices in that section reflect the choices contemplated by Ch. 655.82, F.S., Florida's "pay-on-death" statute, which provides a comprehensive framework for determining and regulating the right of access of various classes or categories of interested persons to funds on deposit in financial institution accounts based on specific designations made by the depositor in a contract of deposit. The statute provides for two distinct types of survivorship rights: 1) that which may exist between multiple parties who share present ownership and the right of access to the account (equivalent to a common law joint tenancy with right of survivorship); and 2) the expectancy of a named beneficiary (single or multiple) not connected to any presently vested ownership or right of access to the account to become the owner of the account balance on the death of all parties. If the ownership of an account is designated as multiple party—tenants by the entireties, it is redundant to check a box in the rights at death section; as to property held as tenants by the entireties, the husband and wife each have an indivisible interest in the whole property.

■ It is undisputed that Bing Kearney and Tonya Nuhfer Kearney signed the signature card for the 056 account. At the outset, the Court finds that the signature card is not ambiguous. Many of the words in the ownership section have plain, well known meanings. The term "tenancy by the entireties" has a certain legal meaning; an explanation of the meaning of that phrase is not included within the signature card. Bing Kearney testified that he understood the meaning of "tenancy by the entireties.". Under Florida law, a party who signs a contract is presumed to know its contents, and he cannot avoid his obligations thereunder by alleging he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions. *Citibank v. Dalessio*, 756 F.Supp.2d 1361 (M.D.Fla. 2010).

The signature card for the 056 account includes an express disclaimer of intent to own the joint account as TBE. USAmeribank offered Defendant Kearney the option to select a tenancy by the entireties ("multiple-party account—tenancy by the entireties"), among other options. Defendant Kearney selected another option, a multiple party account, with right of survivorship, by initialing those choices. The option to select "multiple-party account—tenancy by the entireties" is not hidden. Pursuant to *Beal Bank, supra,* absent evidence of fraud, the express disclaimer ends the inquiry as to intent not to hold the joint account TBE. Because the signature card for the 056 account includes an express disclaimer, no rebuttable presumption that the joint account is held TBE arises.

The "Signatures" section of the signature card also includes the following:

Signature(s)—The undersigned certifies the accuracy of the information he/she has provided and acknowledges receipt of a completed copy of this form. The Wundersigned authorizes the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following agreement(s) and/or disclosure(s):

X. Terms & Conditions X Truth in Savings X Funds Availability

X Electronic Funds Transfers X Privacy X Substitute Checks

—— . Common Features——

(1) S/Bing Kearney, Jr.

I.D. # Redacted; D.O.B. Redacted

(2) S/Tonya Nuhfer–Kearney

I.D.# Redacted; D.O.B. Redacted

Bing Kearney testified that he had an opportunity to read the signature card, but he did not read it. Given that the signature card was signed on more than one occasion, Bing Kearney had more than one opportunity to read the signature card. Bing Kearney further testified that he was not provided with a copy of the signature card at the time he signed it; Bing Kearney also acknowledged that USAmeribank would have provided a copy if he had requested it.

In *Beal Bank,* express preclusion from holding an account as a TBE account took the form of a statement in the "Welcome Brochure" that, even if the account is titled .as a TBE account, the Customer agrees that the funds in the joint account are held as joint tenants with right of survivorship. The Court has looked for some evidence that USAmeribank expressly precluded Defendant Kearney from the TBE form of ownership, but has found none. Defendant Kearney did not argue that USAmeribank precluded Defendant from holding the joint account TBE by its statements in the other agreements incorporated into the deposit agreement. The Court looked for, but did not find, other agreements within the record.

In the absence of fraud, the unambiguous signature card which expressly disclaims intent to hold the joint account TBE is conclusive evidence of intent not to hold the joint account TBE. No evidence of fraud was offered at the evidentiary hearing. The signature card is sufficient to establish an agreement in writing not to hold the account as TBE, as would be presumed pursuant to Sec. 655.79, *Fla. Stat.,* in the absence of an agreement that otherwise specifies how the account is held. *Wexler v. Rich,* 80 So.3d 1097 (Fla. 4th DCA 2012).

The signature card for the subject account shows that USAmeribank offered

the option of holding the account TBE. Because USAmeribank offered Defendant Kearney the option of holding the joint account TBE, and did not preclude Defendant Kearney from holding the joint account TBE, Defendant Kearney may not prove by other evidence that the joint account was intended to be held TBE. If USAmeribank had not offered Defendant Kearney the option of a TBE account, there would have been no express disclaimer, and a rebuttable presumption of intent to hold the joint account TBE would have arisen, shifting to Plaintiff Regions Bank the burden of proving that the depositors did not intend to hold the joint account TBE. If USAmeribank had precluded Defendant Kearney from holding the joint account TBE, Defendant Kearney could have offered other evidence to attempt to establish intent to hold the joint account TBE by a preponderance of the evidence. The Court concludes that, given that all other unities are present, the 056 account was held as a joint tenant with right of survivorship account.

The Court sustains the objections of Plaintiff Regions Bank as to whether the signature card was ambiguous, and as to the presence of an express disclaimer. As a matter of law, the date a bank account is opened is the operative date for establishing ownership of a financial account. *In re Stephenson,* 2012 WL 4896725 (Bankr. M.D.Fla.2012). Defendant Kearney has not shown the presence of fraud that would cast doubt on the intent expressed in the signature card. Based on the evidentiary hearing, the Court has resolved only the ownership of the 056 account. The Court has determined the 056 account is not exempt.

Motion to Dissolve

As to notice issues, the Court has **sustained** Plaintiff's Objections to the Report and Recommendation. The Court **denies** the Motion to Dissolve (Dkt. 255) as to the USAmeribank Writ.

As to the Platinum Bank Writ, the Court **denies** the Motion to Dissolve on the basis of failure to comply with statutory garnishment procedures (Dkt. 255). Bing Kearney moved to dissolve for failure to comply with statutory procedures. The supporting affidavit of Clayton Kearney asserts that the funds in the accounts belong only to Clayton Kearney. The disputed issue of ownership of the funds in the accounts is determined at trial. Ch. 77.16, *Fla. Stat.*

Claims of Exemption

The Court has **sustained** Plaintiff's Objection to the Report and Recommendation, finding that the signature card is an unambiguous contract which contains an express disclaimer of the ownership of the 056 account as tenants by the entireties. An express disclaimer ends the inquiry as to intent. Since the Court has determined that the 056 USAmeribank account is not held as TBE, the account is not exempt.

■■■ As to the remaining five accounts at USAmeribank, and four accounts at Platinum Bank, the ownership of the funds in those accounts is disputed, and is beyond the scope of the Report and Recommendation. No Claim of Exemption was filed as to the Platinum Bank accounts. The Court notes that a Motion for Final Judgment in Garnishment (Dkt. 395) is pending. Before a final judgment authorizing the judgment creditor to reach the funds held by the garnishee is entered, the interests of the joint depositor in the funds should be conclusively determined and the applicable law applied thereto. *Antuna v. Dawson,* 459 So.2d 1114 (Fla. 4th DCA 1984). Ch. 77.16, *Fla. Stat.* provides the determination is made at trial. *Merriman Investments, LLC v. Ujowundu,* 123 So.3d 1191 (Fla. 3d DCA 2013). The Court un-

derstands this to mean that the claims can be determined on summary judgment prior to trial. The Court will rule on other pending motions in a separate Order.